### GOULD v. LENOX CORP.

(Supreme Court, Appellate Division, Fourth Department.. February 3, 1899.)

CONTRACTS—BREACH—EVIDENCE.

The owners of an apartment house were to furnish plaintiff and his wife, without charge, as part of a contract for services, a room and board in the house, of the same character and quality as were furnished guests, and could dissolve the contract on payment of $300. They refused to permit plaintiff and his wife to occupy the public dining room, where meals were $9 a week (though there were vacant places there), but made them take their meals with the nurses, waiters, and employés, where the meals were $3.50 and $4 per week, and put them in a room intended for a single person, and on the seventh floor, unconnected with the main corridors, opening on the freight elevator, down which the garbage from the kitchen passed, and near which the garbage cans were placed. *Held* to tend to show a breach of the contract, entitling plaintiff to the $300, and hence to require submission of the question to the jury.

Appeal from special term.

Action by Harry J. Gould against Lenox Corporation. There was a judgment for plaintiff for less than the sum demanded, and he appeals. Reversed.

The defendant is a domestic corporation owning and operating an apartment house in the city of Buffalo, and in the complaint it is alleged that on the 7th of August, 1897, it entered into an agreement and contract in writing with the plaintiff, "whereby said defendant promised and agreed to, and did then and there, engage the services of this plaintiff for a period of one year, commencing on the 9th day of August, 1897, and whereby said defendant agreed, as consideration for the rendering of the said services by the plaintiff: (1) To pay the plaintiff the monthly salary of seventy-five dollars ($75.00), and to furnish to plaintiff and plaintiff's wife, without charge, a room and board at the Lenox Apartment House, in the city of Buffalo, said room and board to be of such character and quality as was and is regularly furnished to the guests, boarders, and tenants of said apartment house by the defendant; or (2) to pay to plaintiff the monthly salary of seventy-five dollars ($75.00), and to provide room and board, without charge, for plaintiff and plaintiff's wife, in a building other than the said Lenox Apartment House; or (3) to pay to plaintiff the salary of one hundred twenty-five dollars ($125.00) per month, in lieu of other compensation, as defendant should from time to time elect." The plaintiff entered into the employment of the defendant under the contract, and remained in the service of the defendant until some day in the month of November, 1897, when it is alleged that the defendant repudiated, broke, and dissolved the contract, and discharged the plaintiff, and refused to further furnish plaintiff and plaintiff's wife with the said board and room in the Lenox Apartment House, or to provide board and room for the plaintiff and plaintiff's wife in a building other than the said Lenox Apartment House, or to pay to plaintiff, then or at any time thereafter, the salary of $125 per month, in lieu of other compensation, according to the terms of the said contract. It is further alleged in the complaint that, by reason of the breach of said contract on the part of the defendant, there became due to the plaintiff the sum of $420.

The defendant, in its answer, admitted that it was a corporation, and that on the 7th of August, 1897, it entered into an agreement and contract, in writing, with the plaintiff. It alleges that the plaintiff was furnished by the defendant "with a room and board at the said Lenox Apartment House, according to the terms of the said contract." The answer also sets out the contract entered into between the parties on the 7th of August, 1897. That contract contains the following clauses, to wit: "It is understood that, if we desire, we can pay you $125 per month, in lieu of $75.00 per month and furnishing you and wife room and board. The duration of this contract is to be one year, but it is agreed that this contract may be dissolved by us at the

end of any month, after two months from this date, by paying you three hundred dollars ($300.00) in advance." It is alleged in the answer that the defendant, on the 12th day of November, 1897, broke and violated the contract, and "so continued to, and until the 19th day of November, 1897, at which last-mentioned time plaintiff violated said contract, and refused further to perform the said contract, without the consent or acquiescence of the defendant." It is further alleged that during such time plaintiff performed all the labor and services required of him by defendant under said contract, and continued to occupy the rooms assigned him in the defendant's building; that plaintiff thereby waived the alleged breach by defendant of said contract, and ratified, confirmed, and acquiesced in said alleged wrongful acts of defendant.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Nelson M. Redfield, for appellant.
Edward C. Mason, for respondent.

HARDIN, P. J. Plaintiff upon the trial gave evidence to show that the defendant committed a breach of the contract by declining and refusing to permit the plaintiff to occupy the public dining room, and requiring and insisting that he and his wife omit to take seats and their meals in the public dining room. The evidence tends to show that the price for the meals in the public dining room was at the rate of $9 per week for each person. The evidence also tends to show that the defendant insisted upon the plaintiff and his wife taking their meals in the "ordinary," with the servants, nurse girls and other employés of the defendant. The evidence tends to show that the price for meals in the ordinary, which was a room on the side of the building, where the nurses, maids of tenants in the building, took their meals, as well as the waiters, was $3.50 to $4 per week. There was evidence that there were between 45 and 50 persons taking their meals in the public dining room, and that there were vacant places in that room which might have been occupied by the plaintiff and his wife, the evidence being that the seating capacity of the public dining room was 78. The defendant sought to place the plaintiff and his wife in a room that was "intended to be occupied singly and alone," on the seventh floor, and that the room had a door on to the freight elevator only. It was a medium sized room, in which there was no running water, and off from it was a small closet, and one small window looking out right by the side of the house for the freight elevator, and was next to a room used by the waiters for their dressing room and lounging room. "All the garbage was taken up and down the freight elevator, and the only place for the garbage cans to be put was out on that platform, which was a very small platform, right here by the freight elevator. There was a stairway there, and all the garbage from the kitchen of the house, for the main dining room, went down this freight elevator." There is some evidence tending to show that the room to which the defendant sought to assign the plaintiff and his wife was so situated that a person could not get from there to the main corridors of the building, and that persons occupying it were obliged to go upstairs to the kitchen or to go downstairs to the rear apartments, and that in going downstairs to the basement they could get to the other floors and

hallways to the front of the building. We think that the evidence tended to show that the defendant had committed a breach of the contract, and that the plaintiff and his wife were not properly furnished with facilities for taking their meals in the public dining room, and that they were improperly required to take their meals in the "ordinary." The plaintiff requested the court to direct a verdict in his behalf for the unpaid wages and for the $300 mentioned in the contract. The court declined the request thus made, and the plaintiff took an exception. The counsel for the plaintiff asked "to go to the jury on the facts in this case, upon the contract itself, upon the question of damages, upon the question of breach, upon the question of the right to recover the $300 for the dissolution of the contract on the part of the defendant." This request was declined, and an exception was taken to the refusal. Thereupon the court directed a verdict in favor of the plaintiff for $47, to which direction the plaintiff excepted. We think the learned trial judge fell into an error in refusing to submit the questions of fact, presented by the evidence, to the jury. If the jury, upon the evidence before it, had found that the defendant committed a breach of the contract, as alleged, and as the evidence tended to support, then, in that event, the plaintiff was entitled to recover the unpaid services and the stipulated damages of $300 mentioned in the contract. There was sufficient evidence given upon the trial to have authorized the court to submit the question to the jury as to whether the defendant had not violated its obligations to the plaintiff, and thereby given him the right to recover the damages mentioned in the contract. We think there should be a new trial.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.